## IN THE UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF ALABAMA
### NORTHERN DIVISION

RECEIVED

2020 NOV -9  A 11: 43

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

**TISHA BOWIE,**

    **PLAINTIFF,**

**VS.**                      **CV NO.:   2:20−cv−909**

**MOBIS ALABAMA, LLC,**

    **DEFENDANT.**                  **JURY TRIAL DEMANDED**

### COMPLAINT

## I. JURISDICTION

1.    This action for injunctive relief and damages is brought pursuant to 28 U.S.C. §§ 1331, 1343(4), 2201, 2202, and 42 U.S.C. § 12101 *et seq*. This is a suit authorized and instituted pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq*. (ADA). The jurisdiction of this Court is invoked to secure protection for and to redress the deprivation of rights and Defendant's violation of the Acts and for injunctive relief and damages.

2.    This action for injunctive relief and damages is brought pursuant to 28 U.S.C. §§ 1331, 1343(4), 2201, 2202, 29 U.S.C. § 2617(a)(2). This is a suit authorized and instituted pursuant to the "Family and Medical Leave Act of 1993," 28 U.S.C. § 2601, et. seq. ("FMLA"). The jurisdiction of this Court is invoked to secure protection for and to redress the deprivation of rights and Defendant's violation of the Acts and for injunctive relief and damages.

3.     Defendant, Mobis Alabama, LLC, (hereinafter "Defendant") is an entity subject to suit under 28 U.S.C. § 1331, 29 U.S.C. § 2617(a)(2) and 42 U.S.C. § 12101. Defendant employed at least fifty (50) persons for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year. Defendant employed these fifty (50) employees within 75 miles of Plaintiff's worksite.

4.     Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) within 180 days of the last discriminatory act (Exhibit A).  Plaintiff further filed this lawsuit within ninety (90) days after receipt of the right-to-sue letter issued by the EEOC (Exhibit B).

**II.  PARTIES**

5.     Plaintiff, Tisha Bowie, (hereinafter "Plaintiff") is a resident of Selma, Dallas County, Alabama, and performed work for the Defendant in the counties composing the Middle District of Alabama during the events of this case.  Thus, pursuant to 28 U.S.C. § 1391(b), venue for this action lies in the Middle District, Northern Division.

6.     Defendant Mobis Alabama, LLC (hereinafter "Defendant") is a company registered and doing business in the State of Alabama and has sufficient minimum contacts with the State of Alabama that it is subject to service of process in Alabama.  Therefore, this Court has personal jurisdiction over Defendant.

## III.  STATEMENT OF FACTS

7.    Plaintiff hereby incorporates by reference each of the allegations contained in paragraphs 1 through 6 above.

8.    During 2010, Plaintiff underwent a surgery as a result of a condition known as Lymphedema.

9.    During 2013, Plaintiff was diagnosed with Lymphedema in her arm.

10.    Lymphedema causes swelling in Plaintiff's arm and limits her ability to fully use her arm as compared to other members of the general population.

11.    Defendant hired Plaintiff on or about October 29, 2012, as a Quality Inspector.

12.    Defendant employed Plaintiff as a Quality Inspector

13.    Plaintiff worked as a Quality Inspector until the Defendant terminated her employment.

14.    Plaintiff's job required lifting bumpers which weigh approximately five pounds when empty of accessories and which weigh ten to fifteen pounds when fully stocked with lights, padding, and other parts.

15.    Plaintiff worked continuously in her position and performed the above described lifting duties such that she was qualified for her position and performed her job duties without any reasonable accommodation.

16.    In 2018, Plaintiff sought a reasonable accommodation from Defendant in regard to her Lymphedema.

17.    Plaintiff requested that Defendant place Plaintiff in a specific role as a Quality Inspector to minimize the lifting of bumpers over the course of her shift.

18.    Plaintiff's request did not interfere with the rotation of other Quality Inspectors.

19.    Defendant denied Plaintiff's request for an accommodation as related to her job duties.

20.    Defendant informed Plaintiff that it had no duty to accommodate Plaintiff's disability because her disability was not the result of an on-the-job injury.

21.    Defendant is on notice that Plaintiff has a disability as defined by the Americans with Disabilities Act.

22.    Defendant did provide Plaintiff with the reasonable accommodation of FMLA leave to manage her disability.

23.    Plaintiff previously provided to Defendant's FMLA Administrator certifications of a need for intermittent FMLA leave regarding episodic flare ups related to her Lymphedema on or about June 21, 2018; April 24, 2018; April 11, 2017; November 16, 2017; April 15, 2016; November 3, 2014; August 20, 2014; and, March 31, 2014.

24.    On January 31, 2019, Plaintiff provided to Defendant's FMLA Administrator a renewed certification of a need for intermittent FMLA leave regarding episodic flare ups related to her Lymphedema.

25.    Defendant employs or employed Sala Dumas

26.     During the Spring of 2017, Defendant placed Dumas as the supervisor over Plaintiff's section.

27.     Dumas is aware that Plaintiff exercised intermittent FMLA leave to treat her disability.

28.     Defendant provides for a system allowing employees such as Plaintiff to accumulate vacation hours.

29.     On February 26, 2019, Defendant issued Plaintiff a payroll document for the period of February 4 through February 17, 2019, that informed Plaintiff the had 32.00 Hours under her "Vacation Quota."

30.     On February 26, 2019, Plaintiff informed Dumas of the need to use a vacation day for March 1, 2019.

31.     On February 27, 2019, Plaintiff texted Dumas regarding the unexpected need to care for her mother in Birmingham, Alabama and to use a vacation day for February 27 and 28, 2019.

32.     On March 1, 2019, Plaintiff texted Dumas about the need to use a vacation day again.

33.     On March 5, 2019, Plaintiff filled out a vacation form allowing for her to take vacation for a half-day on February 26, 2019.

34.     On March 5, 2019, Plaintiff filled out a second vacation form allowing for her to take vacation on February 27, 28, and March 1, 2019.

35.     Defendant employs or employed Rita Sulek.

36.     Defendant employs or employed Sulek as 1st Shift Team Leader.

37.     Plaintiff submitted both vacation forms to Sulek.

38.     Sulek has a responsibility to provide the Plaintiff's vacation forms to Dumas.

39.     Plaintiff asked Dumas if everything was acceptable with her vacation forms and he responded in the affirmative.

40.     Dumas later told Plaintiff he submitted the days as FMLA days instead of vacation days.

41.     Plaintiff requested Dumas correct the mistake.

42.     Dumas informed Plaintiff that Monique (LNU) from Defendant's Human Resources Department would telephone her.

43.     Plaintiff spoke with Monique (LNU) and she directed Plaintiff to have Dumas telephone her.

44.     Dumas told Plaintiff he would contact Courtney (LNU) from Defendant's Human Resources Department and correct the categorization of the days that Plaintiff missed from "FMLA" to "vacation."

45.     Plaintiff later spoke with Courtney (LNU) and she informed Plaintiff that Dumas reported her absences as unexcused absences.

46.     After speaking to Courtney (LNU), Plaintiff contacted Dumas and he stated he recorded February 27, 28 and March 1, as vacation days.

47.    Plaintiff contacted Courtney (LNU) again and she informed Plaintiff that Dumas only reported March 1, 2019 as a vacation day.

48.    On March 7, 2019, Plaintiff texted Dumas and again requested he designate the February 27, 28, and March 1, 2019 absences as vacation days.

49.    On March 12, 2019, Defendant issued Plaintiff a payroll document for the period of February 18 through March 3, 2019, that informed Plaintiff she had 20.00 Hours designated as "Vacation Quota", thereby showing Defendant designated only 12.00 hours of her "Vacation Quota."

50.    On March 12, 2019, Plaintiff contacted Kent Marshall about the situation regarding the recategorization of missed days from "FMLA" days to "vacation" days.

51.    Marshall told Plaintiff he would "get back" with her.

52.    Plaintiff also contacted Third Shift Team Relations Chris (LNU) about the regarding the recategorization of missed days from "FMLA" days to "vacation" days.

53.    Chris (LNU) informed Plaintiff he spoke with Marshall about the situation.

54.    On March 26, 2019, Defendant issued Plaintiff a payroll document for the period of March 4 through March 17, 2019, informing Plaintiff she had 00.00 Hours under her "Vacation Quota."

55.    Plaintiff did not exercise any vacation days during the pay period of March 4 through March 17, 2019.

56.    Plaintiff exercised four hours of intermittent FMLA leave on March 4, 2019.

57.    Plaintiff exercised four hours of intermittent FMLA leave on March 8, 2019.

58.    Defendant designated 0.00 hours of intermittent FMLA leave for the date of March 11, 2019.

59.    On April 4, 2019, Marshall called Plaintiff into an office and terminated her employment for the stated reason of absenteeism.

60.    Defendant designated Plaintiff's requested vacation day of February 27, 2019 as an "unscheduled absence" such that the February 27, 2019 absence was not designated as a vacation day, FMLA day, or excused absence.

61.    Defendant designated Plaintiff's requested vacation day of February 28, 2019 as an "unscheduled absence" such that the February 28, 2019 absence was not designated as a vacation day, FMLA day, or excused absence.

62.    Defendant designated Plaintiff's requested vacation day of March 1, 2019 as an "a vacation" day.

63.    Dumas, Chris (LNU), and Mark (LNU), a Quality Manager, were also present when Marshall terminated Plaintiff's employment.

64.     Plaintiff asked Dumas if he filled out the vacation forms with all three days on it and Dumas responded in the affirmative.

65.     Marshall refused to give Plaintiff a copy of the vacation forms but did give Plaintiff a copy of the Defendant's points in which it incorrectly tabulated the attendance point total, thus resulting in Defendant terminating Plaintiff's employment.

66.     Defendant later stated the vacation forms that Plaintiff filled out did not exist.

67.     Defendant employed Kimberly Bodley, Keon Hurt, Nicole Harrell, Derrick Garson, Kenquisha Patterson, Ladarius Rogers, and Joe Nicole Trundle.

68.     Dumas supervised Kimberly Bodley, Keon Hurt, Nicole Harrell, Derrick Garson, Kenquisha Patterson, Ladarius Rogers, and Joe Nicole Trundle.

69.     Dumas provided Kimberly Bodley, Keon Hurt, Nicole Harrell, Derrick Garson, Kenquisha Patterson, Ladarius Rogers, and Joe Nicole Trundle the use of vacation days on short notice and/or even designated previous absences as vacation days after the fact.

70.     At the time that Defendant terminated Plaintiff's employment, Plaintiff had not exhausted her four-hundred and eighty hours of FMLA leave.

## IV.  COUNT ONE - Americans with Disabilities Act - Termination

71.     Plaintiff adopts by reference each and every material averment contained in paragraphs 1 through 70 above as if fully set forth herein.

72.     During 2013, Plaintiff was diagnosed with Lymphedema in her arm.

73.     Lymphedema causes swelling in Plaintiff's arm and limits her ability to fully use her arm as compared to other members of the general population.

74.     Plaintiff suffers from the physical impairment of Lymphedema.

75.     Plaintiff's Lymphedema affects her such that the major life activities of performing manual tasks, eating, and lifting are significantly restricted for Plaintiff as compared to the average person in the general population.

76.     Plaintiff has suffered from Lymphodema since 2010 and condition will affect her for the remainder of her life.

77.     Defendant hired Plaintiff on or about October 29, 2012, as a Quality Inspector.

78.     Defendant employed Plaintiff as a Quality Inspector

79.     Plaintiff's job required lifting bumpers which weigh approximately five pounds when empty of accessories and which weigh ten to fifteen pounds when fully stocked with lights, padding, and other parts.

80.     Plaintiff worked continuously in her position and performed the above described lifting duties such was qualified for her position and performed her job duties without any reasonable accommodation.

81.     In 2018, Plaintiff sought a reasonable accommodation from Defendant in regard to her Lymphedema.

82.     Plaintiff requested that Defendant place Plaintiff in a specific role as a Quality Inspector to minimize the lifting of bumpers over the course of her shift.

83.     Plaintiff's request did not interfere with the rotation of other Quality Inspectors.

84.     Defendant denied Plaintiff's request for an accommodation as related to her job duties.

85.     Defendant did provide Plaintiff with the reasonable accommodation of FMLA leave to manage her disability.

86.     Defendant is on notice that Plaintiff has a disability.

87.     Plaintiff was qualified for the position of Quality Inspector with or without a reasonable accommodation of her disability.

88.     On April 4, 2019, Marshall called Plaintiff into an office and terminated her employment for the stated reason of absenteeism.

89.     Defendant designated Plaintiff's requested vacation day of February 27, 2019 as an "unscheduled absence" such that the February 27, 2019 absence was not designated as a vacation day, FMLA day, or excused absence.

90.     Defendant designated Plaintiff's requested vacation day of February 28, 2019 as an "unscheduled absence" such that the February 28, 2019 absence was not designated as a vacation day, FMLA day, or excused absence.

91.     Defendant designated Plaintiff's requested vacation day of March 1, 2019 as an "a vacation" day.

92.     On March 12, 2019, Defendant issued Plaintiff a payroll document for the period of February 18 through March 3, 2019, that informed Plaintiff she had 20.00 Hours designated as "Vacation Quota", thereby showing Defendant designated only 12.00 hours of her "Vacation Quota."

93.     On March 26, 2019, Defendant issued Plaintiff a payroll document for the period of March 4 through March 17, 2019, informing Plaintiff she had 00.00 Hours under her "Vacation Quota."

94.     Plaintiff did not exercise any vacation days during the pay period of March 4 through March 17, 2019.

95.     Defendant designated Plaintiff's requested vacation day of February 27, 2019 as an "unscheduled absence" such that the February 27, 2019 absence was not designated as a vacation day, FMLA day, or excused absence.

96.     Defendant designated Plaintiff's requested vacation day of February 28, 2019 as an "unscheduled absence" such that the February 28, 2019 absence was not designated as a vacation day, FMLA day, or excused absence.

97.     Defendant designated Plaintiff's requested vacation day of March 1, 2019 as an "a vacation" day.

98.     Dumas, Chris (LNU), and Mark (LNU), a Quality Manager, were also present when Marshall terminated Plaintiff's employment.

99.     Plaintiff asked Dumas if he filled out the vacation forms with all three days on it and Dumas responded in the affirmative.

100.   Marshall refused to give Plaintiff a copy of the vacation forms but did give Plaintiff a copy of the Defendant's points in which it incorrectly tabulated the attendance point total, thus resulting in Defendant terminating Plaintiff's employment.

101.   Defendant later stated the vacation forms that Plaintiff filled out did not exist.

102.   Defendant employed Kimberly Bodley, Keon Hurt, Nicole Harrell, Derrick Garson, Kenquisha Patterson, Ladarius Rogers, and Joe Nicole Trundle.

103.   Dumas supervised Kimberly Bodley, Keon Hurt, Nicole Harrell, Derrick Garson, Kenquisha Patterson, Ladarius Rogers, and Joe Nicole Trundle.

104.   Dumas provided Kimberly Bodley, Keon Hurt, Nicole Harrell, Derrick Garson, Kenquisha Patterson, Ladarius Rogers, and Joe Nicole Trundle the use of vacation days on short notice and/or even designated previous absences as vacation days after the fact.

105.   Upon information and belief, Kimberly Bodley, Keon Hurt, Nicole Harrell, Derrick Garson, Kenquisha Patterson, Ladarius Rogers, and Joe Nicole Trundle did not require the reasonable accommodation of FMLA leave.

106.   As a result of Defendant's discriminatory termination decision in violation of the Americans with Disabilities Act, Plaintiff has been damaged, suffering loss of pay, benefits, and mental anguish.

## V.  COUNT TWO - FMLA INTERFERENCE

107.  Plaintiff adopts by reference each and every material averment contained in paragraphs 1 through 106 above as if fully set forth herein.

108.  During the 12-month period prior to January 31, 2019, Defendant employed Plaintiff for at least 1,250 hours of service.

109.  Defendant employs fifty (50) or more persons for each working day during each of the 20 or more calendar workweeks in the current or preceding calendar year of Plaintiff's January 31, 2019, leave.

110.   For each work week between January 31, 2019 through April 4, 2019, Defendant employed fifty or more employees, worked within 75 miles of the location where Plaintiff worked.

111.  On January 31, 2019, Plaintiff provided to Defendant's FMLA Administrator a renewed certification of a need for intermittent FMLA leave regarding episodic flare ups related to her Lymphedema.

112.  Plaintiff previously provided to Defendant's FMLA Administrator certifications of a need for intermittent FMLA leave regarding episodic flare ups related to her Lymphedema on or about June 21, 2018; April 24, 2018; April 11, 2017; November 16, 2017; April 15, 2016; November 3, 2014; August 20, 2014; and, March 31, 2014.

113.  Defendant interfered with Plaintiff's FMLA rights by incorrectly designating "vacation" days as "FMLA" days.

114.   On April 4, 2019, Marshall called Plaintiff into an office and terminated her employment for the stated reason of absenteeism.

115.   At the time Defendant terminated Plaintiff's employment, Plaintiff had not exercised her full allotment of FMLA hours.

116.   On February 26, 2019, Defendant issued Plaintiff a payroll document for the period of February 4 through February 17, 2019, that informed Plaintiff the had 32.00 Hours under her "Vacation Quota."

117.   Defendant designated Plaintiff's requested vacation day of February 27, 2019 as an "unscheduled absence" such that the February 27, 2019 absence was not designated as a vacation day, FMLA day, or excused absence.

118.   Defendant designated Plaintiff's requested vacation day of February 28, 2019 as an "unscheduled absence" such that the February 28, 2019 absence was not designated as a vacation day, FMLA day, or excused absence.

119.   Defendant designated Plaintiff's requested vacation day of March 1, 2019 as an "a vacation" day.

120.   On March 12, 2019, Defendant issued Plaintiff a payroll document for the period of February 18 through March 3, 2019, that informed Plaintiff she had 20.00 Hours designated as "Vacation Quota", thereby showing Defendant designated only 12.00 hours of her "Vacation Quota."

121.   On March 26, 2019, Defendant issued Plaintiff a payroll document for the period of March 4 through March 17, 2019, informing Plaintiff she had 00.00 Hours under her "Vacation Quota."

122.   Plaintiff did not exercise any vacation days during the pay period of March 4 through March 17, 2019.

123.   Plaintiff exercised four hours of intermittent FMLA leave on March 4, 2019.

124.   Plaintiff exercised four hours of intermittent FMLA leave on March 8, 2019.

125.   Defendant designated 0.00 hours of intermittent FMLA leave for the date of March 11, 2019.

126.   Defendant's employees had knowledge that Plaintiff suffered from an FMLA qualifying condition for which she needed treatment through her doctor and/or because she suffered episodic flare-ups.

127.   Defendant interfered with Plaintiff's ability to exercise use of "vacation hours."

128.   As a result of Defendant's refusal to deem her absences as "vacation hours", Defendant caused Plaintiff to exceed the points under its attendance policy, thus creating a pretextual reason for terminating Plaintiff's employment.

129.   Defendant employed Kimberly Bodley, Keon Hurt, Nicole Harrell, Derrick Garson, Kenquisha Patterson, Ladarius Rogers, and Joe Nicole Trundle.

130.   Dumas supervised Kimberly Bodley, Keon Hurt, Nicole Harrell, Derrick Garson, Kenquisha Patterson, Ladarius Rogers, and Joe Nicole Trundle.

131.   Dumas provided Kimberly Bodley, Keon Hurt, Nicole Harrell, Derrick Garson, Kenquisha Patterson, Ladarius Rogers, and Joe Nicole Trundle the use of vacation days on short notice and/or even designated previous absences as vacation days after the fact.

132.   At the time that Defendant terminated Plaintiff's employment, Plaintiff had not exhausted her four-hundred and eighty hours of FMLA leave.

133.   As a result of Defendant's interference with Plaintiff's rights under the FMLA, Plaintiff has been damaged, suffering loss of pay and benefits.

## VI.  COUNT THREE – FMLA INTERFERENCE

134.   Plaintiff adopts by reference each and every material averment contained in paragraphs 1 through 133 above as if fully set forth herein.

135.   During the 12-month period prior to February 26, 2019, Defendant employed Plaintiff for at least 1,250 hours of service.

136.   During the work week of February 26, 2019, Defendant employed fifty (50) or more persons for each working day during each of the 20 or more calendar workweeks in the current or preceding calendar year.

137.   During the work week of February 26, 2019, Defendant employed fifty or more employees, worked within 75 miles of the location where Plaintiff worked.

138.   On February 26, 2019, Plaintiff provided notice of unforeseeable FMLA leave to Salas Dumas.

139.   Plaintiff provided notice of her unforeseeable need of FMLA leave as soon as practicable upon the discovery of information about a change in circumstances regarding the caregiving needs for her mother.

140.   Defendant failed to provide Plaintiff with a Notice of Eligibility and Rights and Responsibilities form for the care of a parent.

141.   Defendant failed to provide Plaintiff with an FMLA Designation Notice form for the care of a parent.

142.   Defendant failed to provide Plaintiff with an FMLA Certification of Health Care Provider for Family Member's Serious Health Condition for the care of a parent.

143.   Defendant provides for a system allowing employees such as Plaintiff to accumulate vacation hours.

144.   On February 26, 2019, Defendant issued Plaintiff a payroll document for the period of February 4 through February 17, 2019, that informed Plaintiff she had 32.00 Hours under her "Vacation Quota."

145.   On February 26, 2019, Plaintiff informed Dumas of the need to use a vacation day for March 1, 2019.

146.   On February 27, 2019, Plaintiff texted Dumas regarding the unexpected need to care for her mother in Birmingham, Alabama and her need to use a vacation day for February 27 and 28, 2019.

147.   On March 1, 2019, Plaintiff texted Dumas about the need to use a vacation day again.

148.   On March 5, 2019, Plaintiff filled out a vacation forms allowing for her to take vacation for a half-day on February 26, 2019.

149.   On March 5, 2019, Plaintiff filled out a form allowing for her to take vacation on February 27, 28, and March 1, 2019.

150.   Defendant employs or employed Rita Sulek.

151.   Defendant employs or employed Sulek as 1st Shift Team Leader.

152.   Plaintiff submitted both vacation forms to Sulek.

153.   Sulek has a responsibility to provide the Plaintiff's vacation forms to Dumas.

154.   Plaintiff asked Dumas if everything was acceptable with her vacation forms and he responded in the affirmative.

155.   Dumas later told Plaintiff he categorized the days as "FMLA" related to her Lymphedema instead of vacation days.

156.   Plaintiff requested Dumas correct the mistake.

157.   Dumas informed Plaintiff that Monique (LNU) from Defendant's Human Resources Department would telephone her.

158. Plaintiff spoke with Monique (LNU) and she directed Plaintiff to have Dumas telephone her.

159. Dumas told Plaintiff he would contact Courtney (LNU) from Defendant's Human Resources Department and correct the categorization of the days that Plaintiff missed from "FMLA" to "vacation."

160. Plaintiff later spoke with Courtney (LNU) and she informed Plaintiff that Dumas reported her absences as unexcused absences.

161. After speaking to Courtney (LNU), Plaintiff contacted Dumas and he stated he recorded February 27, 28 and March 1, as vacation days.

162. Plaintiff contacted Courtney (LNU) again and she informed Plaintiff that Dumas only reported March 1, 2019 as a vacation day.

163. On March 7, 2019, Plaintiff texted Dumas and requested he designate the February 27, 28, and March 1, 2019 absences as vacation days.

164. On March 12, 2019, Defendant issued Plaintiff a payroll document for the period of February 18 through March 3, 2019, that informed Plaintiff she had 20.00 Hours designated as "Vacation Quota", thereby showing Defendant designated only 12.00 hours of her "Vacation Quota."

165. On March 12, 2019, Plaintiff contacted Kent Marshall about the situation regarding the recategorization of missed days from "FMLA" days to "vacation" days.

166. Marshall told Plaintiff he would "get back" with her.

167.    Plaintiff also contacted Third Shift Team Relations Chris (LNU) about the regarding the recategorization of missed days from "FMLA" days to "vacation" days.

168.    Chris (LNU) informed Plaintiff he spoke with Marshall about the situation.

169.    On March 26, 2019, Defendant issued Plaintiff a payroll document for the payroll period of March 4 through March 17, 2019, informing Plaintiff she had 00.00 Hours under her "Vacation Quota."

170.    Plaintiff did not exercise any "Vacation Quota" days  during the pay period of March 4 through March 17, 2019.

171.    Plaintiff exercised four hours of intermittent FMLA leave on March 4, 2019.

172.    Plaintiff exercised four hours of intermittent FMLA leave on March 8, 2019.

173.    Defendant designated 0.00 hours of intermittent FMLA leave for the date of March 11, 2019.

174.    On April 4, 2019, Marshall called Plaintiff into an office and terminated her employment for the stated reason of absenteeism.

175.    Defendant designated Plaintiff's requested vacation day of February 27, 2019 as an "unscheduled absence" such that the February 27, 2019 absence was not designated as a vacation day, FMLA day, or excused absence.

176.   Defendant designated Plaintiff's requested vacation day of February 28, 2019 as an "unscheduled absence" such that the February 28, 2019 absence was not designated as a vacation day, FMLA day, or excused absence.

177.   Defendant designated Plaintiff's requested vacation day of March 1, 2019 as an "a vacation" day.

178.   Dumas, Chris (LNU), and Mark (LNU), a Quality Manager, were also present when Marshall terminated Plaintiff's employment.

179.   Plaintiff asked Dumas if he filled out the vacation forms with all three days on it and Dumas responded in the affirmative.

180.   Marshall refused to give Plaintiff a copy of the vacation forms but did give Plaintiff a copy of the Defendant's points in which it incorrectly tabulated the attendance point total, thus resulting in Defendant terminating Plaintiff's employment.

181.   Defendant later stated the vacation forms that Plaintiff filled out did not exist.

182.   At the time that Defendant terminated Plaintiff's employment, Plaintiff had not exhausted her four-hundred and eighty hours of FMLA leave.

183.   As a result of Defendant's refusal to deem her absences as "vacation hours", Defendant caused Plaintiff to exceed the points under its attendance policy, thus creating a pretextual reason for terminating Plaintiff's employment.

184.   Defendant employed Kimberly Bodley, Keon Hurt, Nicole Harrell, Derrick Garson, Kenquisha Patterson, Ladarius Rogers, and Joe Nicole Trundle.

185.   Dumas supervised Kimberly Bodley, Keon Hurt, Nicole Harrell, Derrick Garson, Kenquisha Patterson, Ladarius Rogers, and Joe Nicole Trundle.

186.   Dumas provided Kimberly Bodley, Keon Hurt, Nicole Harrell, Derrick Garson, Kenquisha Patterson, Ladarius Rogers, and Joe Nicole Trundle the use of vacation days on short notice and/or even designated previous absences as vacation days after the fact.

187.   As a result of Defendant's interference with Plaintiff's rights under the FMLA, Plaintiff has been damaged, suffering loss of pay and benefits

## VII.   COUNT FOUR - FMLA RETALIATION

188.   Plaintiff adopts by reference each and every material averment contained in paragraphs 1 through 187 above as if fully set forth herein.

189.   During the 12-month period prior to February 26, 2019, Defendant employed Plaintiff for at least 1,250 hours of service.

190.   During the work week of February 26, 2019, Defendant employed fifty (50) or more persons for each working day during each of the 20 or more calendar workweeks in the current or preceding calendar year.

191.   During the work week of February 26, 2019, Defendant employed fifty or more employees, worked within 75 miles of the location where Plaintiff worked.

192.   On February 26, 2019, Plaintiff provided notice of unforeseeable FMLA leave to Salas Dumas.

193.   Plaintiff provided notice of her unforeseeable need of FMLA leave as soon as practicable upon the discovery of information about a change in circumstances regarding the caregiving needs for her mother.

194.   Defendant failed to provide Plaintiff with a Notice of Eligibility and Rights and Responsibilities form for the care of a parent.

195.   Defendant failed to provide Plaintiff with an FMLA Designation Notice form for the care of a parent.

196.   Defendant failed to provide Plaintiff with an FMLA Certification of Health Care Provider for Family Member's Serious Health Condition for the care of a parent.

197.   Defendant provides for a system allowing employees such as Plaintiff to accumulate vacation hours.

198.   On February 26, 2019, Defendant issued Plaintiff a payroll document for the period of February 4 through February 17, 2019, that informed Plaintiff she had 32.00 Hours under her "Vacation Quota."

199.   On February 26, 2019, Plaintiff informed Dumas of the need to use a vacation day for March 1, 2019.

200.   On February 27, 2019, Plaintiff texted Dumas regarding the unexpected need to care for her mother in Birmingham, Alabama and her need to use a vacation day for February 27 and 28, 2019.

201.   On March 1, 2019, Plaintiff texted Dumas about the need to use a vacation day again.

202.   On March 5, 2019, Plaintiff filled out a vacation forms allowing for her to take vacation for a half-day on February 26, 2019.

203.   On March 5, 2019, Plaintiff filled out a form allowing for her to take vacation on February 27, 28, and March 1, 2019.

204.   Defendant employs or employed Rita Sulek.

205.   Defendant employs or employed Sulek as 1st Shift Team Leader.

206.   Plaintiff submitted both vacation forms to Sulek.

207.   Sulek has a responsibility to provide the Plaintiff's vacation forms to Dumas.

208.   Plaintiff asked Dumas if everything was acceptable with her vacation forms and he responded in the affirmative.

209.   Dumas later told Plaintiff he categorized the days as "FMLA" related to her Lymphedema instead of vacation days.

210.   Plaintiff requested Dumas correct the mistake.

211.   Dumas informed Plaintiff that Monique (LNU) from Defendant's Human Resources Department would telephone her.

212.   Plaintiff spoke with Monique (LNU) and she directed Plaintiff to have Dumas telephone her.

213.   Dumas told Plaintiff he would contact Courtney (LNU) from Defendant's Human Resources Department and correct the categorization of the days that Plaintiff missed from "FMLA" to "vacation."

214.   Plaintiff later spoke with Courtney (LNU) and she informed Plaintiff that Dumas reported her absences as unexcused absences.

215.   After speaking to Courtney (LNU), Plaintiff contacted Dumas and he stated he recorded February 27, 28 and March 1, as vacation days.

216.   Plaintiff contacted Courtney (LNU) again and she informed Plaintiff that Dumas only reported March 1, 2019 as a vacation day.

217.   On March 7, 2019, Plaintiff texted Dumas and requested he designate the February 27, 28, and March 1, 2019 absences as vacation days.

218.   On March 12, 2019, Defendant issued Plaintiff a payroll document for the period of February 18 through March 3, 2019, that informed Plaintiff she had 20.00 Hours designated as "Vacation Quota", thereby showing Defendant designated only 12.00 hours of her "Vacation Quota."

219.   On March 12, 2019, Plaintiff contacted Kent Marshall about the situation regarding the recategorization of missed days from "FMLA" days to "vacation" days.

220.   Marshall told Plaintiff he would "get back" with her.

221.   Plaintiff also contacted Third Shift Team Relations Chris (LNU) about the regarding the recategorization of missed days from "FMLA" days to "vacation" days.

222.   Chris (LNU) informed Plaintiff he spoke with Marshall about the situation.

223.   On March 26, 2019, Defendant issued Plaintiff a payroll document for the payroll period of March 4 through March 17, 2019, informing Plaintiff she had 00.00 Hours under her "Vacation Quota."

224.   Plaintiff did not exercise any "Vacation Quota" days  during the pay period of March 4 through March 17, 2019.

225.   Plaintiff exercised four hours of intermittent FMLA leave on March 4, 2019.

226.   Plaintiff exercised four hours of intermittent FMLA leave on March 8, 2019.

227.   Defendant designated 0.00 hours of intermittent FMLA leave for the date of March 11, 2019.

228.   On April 4, 2019, Marshall called Plaintiff into an office and terminated her employment for the stated reason of absenteeism.

229.   Defendant designated Plaintiff's requested vacation day of February 27, 2019 as an "unscheduled absence" such that the February 27, 2019 absence was not designated as a vacation day, FMLA day, or excused absence.

230.   Defendant designated Plaintiff's requested vacation day of February 28, 2019 as an "unscheduled absence" such that the February 28, 2019 absence was not designated as a vacation day, FMLA day, or excused absence.

231.   Defendant designated Plaintiff's requested vacation day of March 1, 2019 as an "a vacation" day.

232.   Dumas, Chris (LNU), and Mark (LNU), a Quality Manager, were also present when Marshall terminated Plaintiff's employment.

233.   Plaintiff asked Dumas if he filled out the vacation forms with all three days on it and Dumas responded in the affirmative.

234.   Marshall refused to give Plaintiff a copy of the vacation forms but did give Plaintiff a copy of the Defendant's points in which it incorrectly tabulated the attendance point total, thus resulting in Defendant terminating Plaintiff's employment.

235.   Defendant later stated the vacation forms that Plaintiff filled out did not exist.

236.   At the time that Defendant terminated Plaintiff's employment, Plaintiff had not exhausted her four-hundred and eighty hours of FMLA leave.

237.   As a result of Defendant's refusal to deem her absences as "vacation hours", Defendant caused Plaintiff to exceed the points under its attendance policy, thus creating a pretextual reason for terminating Plaintiff's employment.

238.   Defendant employed Kimberly Bodley, Keon Hurt, Nicole Harrell, Derrick Garson, Kenquisha Patterson, Ladarius Rogers, and Joe Nicole Trundle.

239.   Dumas supervised Kimberly Bodley, Keon Hurt, Nicole Harrell, Derrick Garson, Kenquisha Patterson, Ladarius Rogers, and Joe Nicole Trundle.

240.   Dumas provided Kimberly Bodley, Keon Hurt, Nicole Harrell, Derrick Garson, Kenquisha Patterson, Ladarius Rogers, and Joe Nicole Trundle the use of vacation days on short notice and/or even designated previous absences as vacation days after the fact.

241.   Upon information and belief, Kimberly Bodley, Keon Hurt, Nicole Harrell, Derrick Garson, Kenquisha Patterson, Ladarius Rogers, and Joe Nicole Trundle did not exercise intermittent FMLA rights during the course of their entire employment.

242.   As a result of Defendant's discriminatory termination decision in violation of the FMLA, Plaintiff has been damaged, suffering loss of pay and benefits.

## VIII.  PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully prays for the following relief:

A.     Grant Plaintiff a permanent injunction enjoining the Defendant, its agents, successors, employees, attorneys and those acting in concert with the Defendant and at the Defendant's request from continuing to violate the terms of the Americans with Disabilities Act;

B.      Grant Plaintiff a permanent injunction enjoining the Defendant, its agents, successors, employees, attorneys and those acting in concert with the Defendant and at the Defendant's request from continuing to violate the terms of the Family and Medical Leave Act;

C.      Enter an Order requiring the Defendant to make Plaintiff whole by awarding reinstatement to the position she would have had, had he not been terminated;

D.      Award her back pay, together with employment benefits, front pay, liquidated damages (as to the FMLA claims only); compensatory damages; punitive damages (as to the ADA claim only); special damages; nominal damages;

E.      Attorneys' fees and costs;

F.      Plaintiff requests that the Court award Plaintiff equitable relief pursuant to 28 U.S.C. § 2201 and 29 U.S.C. § 2601 *et seq*. and 42 U.S.C. § 12101 *et seq*. that the actions of Defendant violated the law; and,

G.      Any different or additional relief as may be determined by the Court to which Plaintiff is entitled.

Allen D. Arnold

**OF COUNSEL:**

ALLEN D. ARNOLD, Attorney at Law
A Member of The Five Points Law Group, LLC
2151 Highland Avenue South, Ste. 205
Birmingham, AL 35205
(205) 252-1550
F: (205) 502-4476
allen@5pointslaw.com

**PLAINTIFF REQUESTS TRIAL BY STRUCK JURY**

OF COUNSEL

**DEFENDANT'S ADDRESS:**
Mobis Alabama, LLC
Corporate Creations Network, Inc.
4000 Eagle Point Corporate Drive
Birmingham, Al 35242